# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE STARRETT, | Case No. 1:15-cv-01582-AWI-SAB (PC) |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| MARGARET MIMMS, et al., | |
| Defendants. | [ECF No. 51] |

Plaintiff Mike Starrett is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment, filed June 29, 2018.

## I.

## BACKGROUND

This action is proceeding on Plaintiff's claims under the First, Sixth and Fourteenth Amendments for damages against Defendants Margaret Mimms, Gattie, Michelle Lefors, Campbell, Rodriguez, Dar, Hernandez, John Doe A (related to February 24, 2016, incident), and against John Doe B for promulgating and authorizing an alleged unconstitutional "inmate correspondence" policy.

# II.

# LEGAL STANDARDS

### A. Statutory Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see Ross v. Blake, __ U.S. __ 136 S.Ct. 1850 (June 6, 2016) ("An inmate need exhaust only such administrative remedies that are 'available.'"). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

### B. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position,

whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

### III.

### DISCUSSION

#### A.     Summary of Plaintiff's Complaint Allegations

On May 5, 2015, Plaintiff mailed attorney client privilege mail to Paul Starrett by giving it to Defendant Campbell. Campbell proceeded to read the contents of the correspondence over Plaintiff's objection.

On June 12, 2015, Plaintiff attempted to mail attorney client privilege mail to witness Paul Starrett by handing it to Defendant Campbell. Campbell refused to mail this correspondence over Plaintiff's objection.

On July 28, 2015, Plaintiff attempted to mail attorney client privilege mail to Paul by handing it to Defendant Campbell. Campbell refused to mail this document over Plaintiff's objection.

3

On July 28, 2015, Plaintiff mailed attorney client privilege mail to Novella Campbell of the American Civil Liberties Union (ACLU) by handing it to Defendant Campbell. Campbell proceeded to read the contents of the correspondence over Plaintiff's objection.

On August 10, 2015, Plaintiff mailed attorney client privilege mail to Novella Coleman of the ACLU, a separate attorney client privilege mail correspondence to Donald Spector of the Prison Law Office, and a separate correspondence to Michael J. Seng of the United States District Court for the Eastern District of California. Defendant Campbell proceeded to read the contents of all three of these correspondences over Plaintiff's objection.

On September 24, 2015, Defendant Duran authorized Defendant Torres to deny Plaintiff's August 15, 2015, grievance, regarding reading and not sending his attorney client legal mail. Plaintiff sent an appeal to the Bureau Commander, either Defendant Vega or Horton are responsible for reviewing the grievance and never responded to such grievance.

On January 5, 2016, Plaintiff mailed attorney client mail to Paul Starrett and handed it to Defendant Hernandez. Hernandez proceeded to read the correspondence over Plaintiff's objection and stated she was authorized to do so pursuant to Fresno County Jail policy.

On January 24, 2016, Plaintiff attempted to send attorney client privilege information to Paul Starrett by handing it to Defendant Rodriguez, but Rodriguez refused to mail this document over Plaintiff's objection.

On January 25, 2016, Plaintiff attempted to mail attorney client privilege correspondence to Paul Starrett by handing it to Defendant Rodriguez, but Rodriguez proceeded to read the contents over Plaintiff's objection and refused to mail it.

On February 24, 2016, Plaintiff attempted to mail attorney client privilege mail to Paul Starrett by giving it to an unknown officer, Defendant John Doe A who refused to mail the document. On this same date, witness Herrera informed Plaintiff of the memorandum authored by Defendant Lefors which prevented floor officers from mailing confidential attorney mail to Paul Starrett.

At some point between June 12, 2015 and February 24, 2016, Defendant Lefors endorsed and posted a flier in the "officer's station" instructing staff not send attorney client privilege mail between

Plaintiff and Paul. Lefors thereby authorized some lower-level officers to deny mailing attorney client privilege mail to Paul.

**B.    Statement of Undisputed Facts**

1.    At all times relevant to this action (August 2015 – July 6, 2016) Plaintiff was a pretrial detainee at the Fresno County Jail ("FCJ"). (Declaration of Lt. Russell Duran ¶ 1 [hereinafter "DRD"].)

2.    The Fresno County Sheriff's Office is responsible for the overall operation of FCJ. (DRD ¶ 2.)

3.    At all times relevant to this action FCJ had in place established inmate grievance processes and procedures pursuant to Section 1073 of Title 15 of the California Code of Regulations, for use and accessible by inmate twenty-four hours a day, seven days a week, to include written and adopted official Department Policy entitled "Policies and Procedures No. E-140 – Inmate Grievance Procedure," as well as an "Inmate Orientation Handbook," also describing the process. (DRD ¶ 3; Pl.'s Second Amd. Compl. at p. 2:1-22 [hereinafter "SAC"].)

4.    At all times relevant to this action, Plaintiff was aware that FCJ had in place, the established inmate grievance processes and procedures. (DRD ¶ 4; SAC at pp. 2:1-22, 15-21, 24.)

5.    The FCJ inmate grievance system involves a structured two-stage process designed to allow inmates to alert FCJ to grievances concerning any condition of confinement at the Jail, including, but not limited to, officer conduct, disciplinary actions, food, mail, medical care, legal services, and telephone. (DRD ¶ 5; SAC at pp. 2:1-22, 15-21, 24.)

6.    Generally, the two progressive stages of the formal process include 1) submission of a timely, properly completed and signed Inmate Grievance Form (J-105A) for floor staff, where an initial attempt can be made to resolve complaints or problems through dialogue and discussion or under certain qualifying circumstances directly to the Bureau Commander; and 2) if necessary when unable to resolve the issue at the first level: submission of a timely and properly completed and signed second-level Inmate Grievance "Appeal" Form (J-105B). (DRD ¶ 6; SAC at pp. 2:1-22, 15-21, 24.)

7.    Proper compliance with Inmate Grievance procedures and Form, J-105A, requires the

inmate to provide specific information related to a grievance, notably: the name of the employee involved in the grievance (if applicable), the identity of any witnesses, the date and time of the incident being grieved, the specific type of grievance limited to one type per grievance, and a description of the important details of the alleged problem, events, reasons, and other relevant information that led to the filing of the grievance. (DRD ¶ 7.)

8. "Confidential" submission of an inmate grievance form direct to the Bureau Captain is reserved for 1) matters that are "sensitive and that involve danger to the inmate's safety or well-being if the information became known"; 2) when the content of the grievance "is of a nature which would pose a threat to the safety of the inmate, staff, or other inmates if the grievance were filed through established procedures"; or 3) "in an emergency," i.e., "if processed through the normal grievance timeframes, would subject the inmate to substantial risk of personal injury, or cause other serious and irreparable harm." (DRD ¶ 8; SAC at p. 20.)

9. FCJ grievance policies and procedures provide that grievances shall be investigated and process for review within a reasonable amount of time after submission, usually within fourteen (14) calendar days. (DRD ¶ 9.)

10. Upon conclusion of its review of an inmate grievance form, FCJ provides the inmates with a copy of its written response, entitled "Inmate Grievance Review Report." (DRD ¶ 10.)

11. At the times relevant herein there was a separate grievance "Appeal" process, consisting of proper completion and timely submission of an inmate grievance "Appeal" form (J-105B). (DRD ¶ 11.)

12. An inmate who was not satisfied with FCJ's response to his inmate grievance (J-105A) could submit an Inmate Grievance Appeal form "within five (5) calendar days from the date of receipt of the response." (DRD ¶ 12.)

13. Pursuant to FCJ grievance policies and procedures, an Appeal is the form submitted by the inmate only in response to (i.e., after) the inmate's receipt of an "Inmate Grievance Review Report." (DRD ¶ 13.)

14. At the times relevant herein, FCJ routed all inmate grievance "Appeal" forms to the "Bureau Commander" for review and response. (DRD ¶ 14.)

15. At the times relevant herein, FCJ grievance policies and procedures provided that "within thirty (30) workdays or as soon as reasonably practicable," the Bureau Commander would issue a written response on the inmate's Appeal form, either affirming or reversing the decision of the Lieutenant and then provide a copy to the inmate. (DRD ¶ 15.)

16. At the times relevant herein, the "Bureau Commander's" decision as to the inmate's grievance "Appeal" was final and, unless otherwise noted in the Commander's written response, deemed an exhaustion of the issue(s) accepted for Appeal. (DRD ¶ 16.)

17. While FCJ procedures provided that a defective grievance could be denied on procedural grounds without addressing the substantive issues, if the defect on which the rejection was based was correctable, the inmate was entitled to a reasonable time extension within which to correct the defect and resubmit the grievance or appeal, if necessary. (DRD ¶ 17.)

18. FCJ grievance policies and procedures provide that "ordinarily, five (5) calendar days from the date of return to the inmate was reasonable for resubmission" of a corrected grievance. (DRD ¶ 18.)

19. FCJ grievance policies and procedures also provide that staff had discretion to accept, and were to consider accepting, a grievance or appeal "that raised a sensitive or problematic issue, even though that submission may have been somewhat untimely." (DRD ¶ 19.)

20. Relative to this action, FCJ records confirm that Plaintiff submitted only one Inmate Grievance (J-105A) form in 2015 (assigned no. 2015080162), which he first submitted to FCJ staff on August 16, 2015. (DRD ¶ 20.)

21. FCJ records confirm that FCJ grievance coordinators assigned to Plaintiff's grievance no. 2015080162 to Lt. Russell Duran for investigation on August 19, 2015. (DRD ¶ 21.)

22. Officer I. Torres was assigned, and interviewed Plaintiff in September 2015 as part of FCJ's investigation of grievance no. 2015080162. (DRD ¶ 22.)

23. On September 24, 2015, Officer I. Torres submitted an Inmate Grievance Review Report to Lt. Russell Duran detailing his finding and recommendations for grievance no. 2015080162. (DRD ¶ 23; see also SAC at p. 21.)

24. FCJ's Inmate Grievance Review Report for grievance no. 2015080162 indicated that 1)

investigators found no instance where staff violated any policy, procedure, regulation or law; and 2) investigators advised Plaintiff how to remedy procedural issues with grievance no. 2015080162 by filing new grievances. (DRD ¶ 24; see also SAC at p. 21.)

25. The Inmate Grievance Review Report for grievance no. 2015080162 also advised Plaintiff of the following additional remedy: "IF YOU ARE NOT SATISFIED WITH THE RESPONSE, you may submit an Appeal within (5) calendar days from the date of receipt," confirming that Plaintiff's time to Appeal began to run from the date of his receipt of this response, and not before. (DRD ¶ 25; see also SAC at p. 21.)

26. The Inmate Grievance Review Report for grievance no. 2015080162 indicates that Officer I. Torres recommended the grievance be found "not sustained," (i.e., unsupported). (DRD ¶ 26; see also SAC at p. 21.)

27. On September 24, 2015, Lt. Russell Duran completed the Inmate Grievance Review Report indicating thereon that he agreed with the decision by Officer Torres finding grievance no. 2015080162 not sustained (i.e., unsupported). (DRD ¶ 27; see also SAC at pp. 3:9-10, 21.)

28. On September 24, 2015, FCJ provided Plaintiff with a copy of the Inmate Grievance Review Report for grievance no. 2015080162, thereby beginning the 5-day period in which he could file an inmate grievance Appeal form. (DRD ¶ 28; see also SAC at p. 3:7.)

29. FCJ records confirm that after Plaintiff's submission of grievance no. 2015080162 on 8/16/2015, FCJ did not receive any further grievance or Appeal related documents or forms from Plaintiff, through any means, including any related to grievance no. 2015080162. (DRD ¶ 29.)

30. At all times relevant to his action, FCJ grievance coordinators accepted, reviewed, and tracked all non-medical inmate J-105 grievances and Appeals submitted for review by inmates pursuant to FCJ's inmate grievance processes and procedures, including confidential grievance and appeal communications received by Bureau Captains. (DRD ¶ 30.)

31. Plaintiff declared under penalty of perjury in his operative Second Amended Complaint filed on July 6, 2016, that 1) he filed one grievance (8/16/2015), and one grievance "Appeal" (9.4.2015); 2) FCJ responded to his 8/16/2015 grievance on September 24, 2015; and 3) that he filed the "Appeal" before the response arrived "in order to avoid untimeliness sanctions." (DRD ¶ 31.)

8

32. Had Plaintiff properly submitted a proper Inmate Grievance Appeal form to FCJ staff at any time relevant to this action, FCJ grievance coordinators would have received it, and then logged, numbered, and scanned it into the computer system before routing it to the Bureau Captain for further review and processing pursuant to FCJ practices and policies. (DRD ¶ 32.)

33. Had Plaintiff properly submitted a proper Inmate Grievance Appeal form to an FCJ Bureau Captain at any time relevant to this action, FCJ grievance coordinators would have received it, and then logged, numbered, and scanned the grievance into the computer system before routing it for further review and processing pursuant to FCJ practices and policies. (DRD ¶ 33.)

34. Had FCJ actually received the Inmate Grievance Appeal form that Plaintiff contends he submitted on 9/4/15, FCJ would have properly rejected it as premature and defective. (DRD ¶ 34.)

35. Plaintiff had ample opportunity after receiving FCJ's Inmate Grievance Review Report for grievance no. 2015080162, provided to Plaintiff on 9/24/2015, and before filing his lawsuit, to either submit a proper "Appeal" to the response, or submit a new or revised grievance as instructed. (DRD ¶ 35.)

### C. Analysis and Findings on Defendants' Motion

FCJ regulations do not establish a firm deadline for responding to grievances, but grievances were usually investigated and processed within fourteen days. (DRD ¶ 9.) It is undisputed that the investigator would make a recommendation to either sustain or not sustain the grievance, and the Bureau Commander made the final decision on the grievance. (DRD ¶¶ 6, 10-14.) Grievances were only deemed exhausted after review by the Bureau Commander. (DRD ¶ 16.) On August 16, 2015, Plaintiff submitted a grievance (J-105A) form (assigned no. 2015080162) alleging that based on written and unwritten polices regarding attorney-client privileged correspondence was being unconstitutionally read and censored. (SAC at p. 15.) The grievance was assigned to Lt. Russell Duran for investigation on August 19, 2015. (DRD ¶ 21.) In September 2015, Officer I. Torres interviewed Plaintiff as part of FCJ's investigation of the grievance. (DRD ¶ 22.) On September 24, 2015, Officer Torres submitted an Inmate Grievance Review Report to Lt. Russell Duran indicating that 1) investigators found no instance where staff violated any policy, procedure, regulation or law; and 2) investigators advised Plaintiff how to remedy procedural issues with grievance no. 2015080162

by filing new or revised grievances. (DRD ¶¶ 23-24.) The Inmate Grievance Review Report specifically advised Plaintiff "IF YOU ARE NOT SATISFIED WITH THE RESPONSE, you may submit an Appeal within (5) calendar days from the date of receipt." (DRD ¶ 25.) As just stated, Officer Torres recommended FCJ find the grievance "not sustained," (i.e., unsupported). (DRD ¶ 26.) On September 24, 2015, Lt. Russell Duran completed the Inmate Grievance Review Report, indicating thereon that he agreed with the decision by Officer Torres finding grievance no. 2015080162 not sustained. (DRD ¶ 27.) On September 24, 2015, FCJ provided Plaintiff with a copy of the Inmate Grievance Review Report thereby beginning the 5-day period in which he could file an inmate grievance Appeal form. (DRD ¶ 28; see also SAC at p. 3:7.)

      Plaintiff admits that he filed only one grievance (dated August 16, 2015), and one grievance "Appeal" (dated September 4, 2015), claiming the appeal was to avoid "untimeliness sanctions." (SAC at p.3:4-6; Pl's Opp'n at p. 3.) Plaintiff further admits that FCJ responded to his August 16, 2015 grievance on September 24, 2015. (SAC at 3:7-10.) Had Plaintiff submitted a proper Inmate Grievance Appeal form to an FCJ Bureau Captain at any time relevant to this action, FCJ grievance coordinators would have received it, and then logged, numbered, and scanned the grievance into the computer system before routing it for further review and processing pursuant to FCJ practices and policies. (DRD ¶ 33.) Had FCJ actually received the Inmate Grievance Appeal form that Plaintiff contends he submitted on 9/4/15, FCJ would have properly rejected it as premature and defective. (DRD ¶ 34.)

      Plaintiff's claim that an inmate appeal is due exactly fourteen plus five-calendar days from its submission is contrary to the plain language of the jail's exhaustion policy. The policy clearly states that an "appeal" is timely if submitted within five-calendar days of receipt of the jail's response to the grievance, which can be received more than fourteen-calendar days after its submission. In this instance, on September 4, 2015 (the date of Plaintiff's alleged appeal) he admittedly had not yet received the jail's response to his grievance and there was nothing to appeal at that point. There is no provision setting forth a "default denial" after a fourteen-day period or for the allowance of an appeal form other than in response to an Inmate Grievance Review Report.

Plaintiff admits that he received the September 24, 2015, denial prior to filing the original complaint in this action on October 16, 2015, he received the jail's response to his original August 15, 2015, grievance form no. 2015080162, which included a detailed explanation of FCJ's determination. (SAC at pp. 3, 21.) In this instance, Plaintiff simply elected to interpret and create his own procedural rules for exhausting the jail's grievance process. Indeed, it is undisputed that regardless of Plaintiff's belief that the jail "defaulted" on the grievance by failing to respond within fourteen calendar days, Plaintiff was notified by letter of the denial on September 24, 2015 and advised that any appeal of the decision was due within five calendar days thereafter, i.e. September 29, 2015. Defendants response on September 24, 2015 was issued within a reasonable time, and Plaintiff has submitted no evidence to the contrary beyond his mistaken belief that a response was mandated within fourteen calendar days.[1] It is further undisputed that after Plaintiff's submission of grievance no. 2015080162 on 8/16/2015, FCJ did not receive any further grievance or Appeal related documents or forms from Plaintiff, through any means, including any related to grievance no. 2015080162. (DRD ¶ 29.)

Defendants have met their burden of proof in demonstrating that there was an available administrative process at FCJ and Plaintiff failed to properly complete such process. Albino, 747 F.3d at 1172. The burden now shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id.

In his opposition, Plaintiff continues to argue that he did submit an "appeal" form J-105 B to the jail on September 4, 2015, by instructing another inmate to place it with an unknown employee for mailing to Captain Vega. (Pl.'s Opp'n at pp. 3-8.) However, as stated above, such submission was not proper to exhaust the August 15, 2015 grievance. Regardless of whether Plaintiff failed to submit the inmate "APPEAL" (j-105B form) as Defendants have no record of it (citation), or whether he did in fact submit such on September 4, 2015, prior to FCJ's response to his grievance on September 24,

---

[1] Moreover, it is immaterial whether the jail responded on September 24, 2015 (as it did), or at all, is not relevant. Plaintiff admittedly submitted the appeal on September 4, 2015, unilaterally determining that the jail's response was overdue and in default, which is clearly improper.

2015, Plaintiff could not have met, and did not meet, the procedural requirements set forth in the jail's administrative procedures.[2]

Plaintiff also contends that he was "mislead" by jail staff regarding his grievance when Officer Torres "promised to take care of the problem." (Opp'n at p. 22). It is undisputed that Plaintiff received the September 24, 2015, response well in advance of filing the instant action and he had ample timely to properly appeal the September 24, 2015 response. Plaintiff simply chose not to follow the proper procedure and filed suit. Indeed, Plaintiff acknowledges in his opposition that "[a]fter receiving the September 24, 2015 denial of the complaint … he realized he was getting nothing more than a run-around … and filed the original civil rights complaint … out of sheer frustration …" (Opp'n at p. 22.) Nonetheless, it was incumbent upon Plaintiff to utilize the procedural process set forth by the jail's policy. Jones v. Bock, 549 U.S. at 218.

As Defendants point out, Plaintiff does not allege or argue (as he previously did in his motion to amend, filed on June 1, 2016, ECF No. 13) that he filed a second (first level) grievance on September 28, 2015, after the receipt of the September 24, 2015 response to his first grievance. Nonetheless, such argument is of no avail. On the grievance form itself (and notably not an "appeal" form), Plaintiff makes it clear that the grievance was a duplicate of the previous grievance submitted on August 6, 2015. (ECF No. 13, at pp. 3, 19-26.) Plaintiff acknowledges that he did not intend the alleged second grievance to be a legitimate grievance, but rather he hoped only that it would "coax" the administration into action. (Id. at p. 3.) Indeed, Plaintiff specifically stated and directed the jail not to construe it as being in anyway related to his first grievance submitted on August 16, 2015, and that it was not an "APPEAL" to the jail's September 24, 2015, response to the first grievance. (ECF No. 13 at pp. 3, 19.) The jail has no record of such second grievance from Plaintiff. (DRD ¶ 29.) For the reasons stated, this grievance could not have served to appeal the grievance at issue in this case.

However, Plaintiff goes on to argue that his September 4, 2015, grievance was an emergency grievance and therefore exempt from the formal grievance process. Plaintiff is mistaken. Pursuant to

---

[2] Furthermore, as previously stated, had FCJ actually received the Inmate Grievance Appeal form that Plaintiff contends he submitted on 9/4/15, FCJ would have properly rejected it as premature and defective. (DRD ¶ 34.)

the jail's policy, certain grievances are indeed exempt from the formal process. These grievances include "confidential submission of an inmate grievance form direct to the Bureau Captain" which is reserved for 1) matters that are "sensitive and that involve danger to the inmate's safety or well-being if the information became known"; and 2) when the content of the grievance "is of a nature which would pose a threat to the safety of the inmate, staff, or other inmates if the grievance were filed through established procedures." In addition, a grievance involves "an emergency," i.e., "if processed through the normal grievance timeframes, would subject the inmate to substantial risk of personal injury, or cause other serious and irreparable harm." (DRD ¶ 8; SAC at p. 20.) It is clear that the safety procedures are applicable to grievances (not appeals) and are intended to prevent a procedural requirement from causing an inmate to suffer serious physical harm, and not to allow an inmate to circumvent or replace the "appeal" process. Plaintiff's argument that the September 4, 2015, involved an emergency as defined by the jail's grievance policy is without merit because there are no allegations of physical harm or threat to his safety, and it would have properly been rejected on such grounds.

The Ninth Circuit has held that there are exceptions to the general PLRA exhaustion requirement where the actions of prison staff render a prisoner's administrative remedies "effectively unavailable." See Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010) (a Warden's rejection based upon mistaken reliance on a regulation "rendered [the prisoner's] administrative remedies effectively unavailable"); Sapp v. Kimbrell, 623 F.3d at 823 (prison officials can render "administrative remedies effectively unavailable by improperly screening a prisoner's grievances"); Albino v. Baca, 747 F.3d at 1177 (failure to inform a prisoner of the administrative appeals process following multiple requests for instruction rendered his administrative remedy effectively unavailable); McBride v. Lopez, 807 F.3d 982, 987 (9th Cir. 2015) ("the threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable."); Brown v. Valoff, 422 F.3d at 940 (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available). Specifically, there is no evidence that Plaintiff was unaware of the prison's administrative grievance procedure, or that any prison official erred in the interpretation of any regulation in deciding the administrative appeals. Further, Plaintiff was not instructed that there was nothing else for him to do

to exhaust his remedies. As discussed herein, FCJ did not "miss its own deadline" as no deadline existed (officials had a reasonable time to respond), the response was issued in a reasonable under the circumstances, and despite advisement on how to appeal the September 24, 2015 decision, Plaintiff simply failed to do so. Accordingly, Plaintiff failed to properly exhaust the administrative remedies and Defendants' motion for summary judgment should be granted.³

## IV.
## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment for failure to exhaust the administrative remedies be granted; and

2. The instant action be dismissed without prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 17, 2018**

UNITED STATES MAGISTRATE JUDGE

---

³ Because the undersigned has found that Plaintiff failed to utilize the available exhaustion process at FCJ, it is unnecessary to reach Defendants' additional argument that the facts alleged in the grievance were not sufficient to exhaust the claims at issue in this action.

14